# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TRI-VALLEY CORPORATION, et al.,<br><br>                     Debtors. | Chapter 7<br><br>Case No. 12-12291 (MFW) |
| CHARTIS SPECIALTY INSURANCE COMPANY,<br><br>                     Plaintiff,<br><br>v.<br><br>TRI-VALLEY CORPORATION and LUNA & GLUSHON,<br><br>                   Defendants. | Adv. Pro. No.: 12-51243 (MFW) |

## TRI-VALLEY CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT

Dated: February 28, 2014

                              William F. Taylor, Jr., # 2936
                              MCCARTER & ENGLISH, LLP
                              405 N. King Street, 8th Floor
                              Wilmington, Delaware, 19801
                              T: 302.984.6300; F: 302.984.6399
                              wtaylor@mccarter.com

                              -and-

                              MCCARTER & ENGLISH, LLP
                              Charles A. Stanziale, Jr.
                              Eduardo J. Glas
                              Four Gateway Center
                              100 Mulberry Street
                              Newark, NJ 07102

                              *Attorneys for the Chapter 7 Trustee*

ME1 17337187v.1

**PRELIMINARY STATEMENT**

This interpleader action presents a discreet issue of law:

> Whether a law firm that provided pre-petition services to the Debtor - or the Debtor itself - is entitled to insurance funds that the Debtor's insurance carrier deposited with the Court in exchange for a release from the Debtor of all claims under such policy.

The law firm, Luna & Glushon ("L&G"), was not an insured under the Chartis policy. In fact, L&G was not even retained by the insurance carrier, but rather by the Debtor itself. As a matter of law, the policy is an asset of the estate.

The Debtor and its insurance carrier agreed in writing that the carrier would turn over all the undisbursed policy funds to the Debtor after a determination that the Debtor had incurred losses that exceeded the policy limits. The carrier, however, carved out approximately $284,000 from the unpaid balance and commenced this interpleader action due to a claim made in a separate adversary proceeding by L&G to be paid from these funds. L&G claimed secured creditor status as to the funds in that adversary action. This Court determined that L&G was not a secured-creditor and dismissed that adversary proceeding.

Because there is no reason to treat the $284,000 that are the subject of this adversary action any differently from the other remaining funds under the policy that were turned over to the Debtor, the Court should enter summary judgment in favor of the Debtor, declaring that those funds belong to the estate.

**STATEMENT OF FACTS**

Chartis Specialty Insurance Company ("Chartis") issued a Pollution Legal Liability Select Policy (the "Policy") to the Debtor for the time period of July 1, 2010, to July 1, 2011, with an aggregate limit of $1,000,000 (the "Policy Limit"). A copy of the Policy is attached hereto as **Exhibit A**.

1. Pleasant Valley Ranch, LLC ("Pleasant Valley") is the owner of the surface estate of an approximately 209-acre parcel of real property located in Ventura County, California, commonly known as the Pleasant Valley Ranch (the "Property"). Pursuant to a lease, Pleasant Valley, as lessor, leased a portion of the Property to the Debtor, as lessee, for its use in connection with its oil and gas exploration and production activities. See "Settlement and Consent to Cure Agreement" (previously filed with the Court as ECF Doc. # 338-1 in Case No. 12-12291) attached hereto as **Exhibit B**.

As part of its oil and gas exploration and production activities on the Property, the Debtor used on the Property a substance commonly known as "diluent," a refined petroleum product used to lower the viscosity of certain types of crude oil. Id. In November 2010, Pleasant Valley discovered that the soil and groundwater at and beneath the Property were impacted with diluent (the "Diluent Condition"). Id. After to this discovery, the Debtor submitted a claim under the Policy. Id. In November 2011, Pleasant Valley filed suit against the Debtor in California Superior Court (the "California State Action") based on the Diluent Condition. Id.

In connection with the Diluent Condition in general and the California State Action specifically, the Debtor retained L&G for legal representation. See Interpleader Complaint in this case, ¶ 10 (ECF #1) and L&G's Answer to Interpleader Complaint, ¶ 10 (ECF #5).

ME1 17337187v.1

On August 7, 2012, the Debtor filed the present bankruptcy case. L&G has never provided any services to the Debtor post-petition.

During the course of the bankruptcy case, the Debtor and Pleasant Valley entered into a settlement agreement that fully resolved all the claims that Pleasant Valley may have had, had, or could have in the future against the Debtor. On or about November 20, 2012, the Court entered an Order approving the settlement with Pleasant Valley. See Docket No. 364 in case 12-12291.

Pursuant to the settlement, the California State Action was dismissed with prejudice, and Pleasant Valley agreed to the assumption and assignment of the Lease to a purchaser of the Debtor's assets, who in turn would agreed to enroll in the Voluntary Cleanup Program administered by the State of California, pursuant to which the purchaser agreed to perform any and all environmental assessment, remediation, and cleanup work required at or in the vicinity of the Property to get a "No Further Action" determination in connection with the Diluent Condition. Exhibit B.

On or about December 7, 2012, the Debtor sold and assigned its interest in the Lease (among other assets) to Clarity Management LP ("Clarity"). See **Exhibit C**. As part of this transaction, Clarity assumed the obligation of remediating the environmental condition in the Property in exchange for a credit of approximately $650,000 against the purchase price. See Exhibit C, § 1.3(a) and § 11.1.

Although initially the Debtor and Clarity had agreed that the credit would be funded by the remaining balance in the Policy, at closing the parties agreed that the insurance funds were payable directly to the Debtor, and the purchaser received the credit as a setoff against the purchase price. See **Exhibit D**.

4

Prior to the petition date, Chartis made four disbursements under the Policy, totaling $356,093.13, to compensate the Debtor for expenses incurred in connection with the Diluent Condition and/or the California State Action. See **Exhibit E**. As of the settlement with Pleasant Valley, the Debtor submitted to Chartis evidence that its loss on account of the environmental condition at the Property had exceeded the balance of funds (i.e., $643,906.87) still available under the Policy. Id. Indeed, the Debtor's loss almost doubled the $1,000,000 policy limit. See **Exhibit F**. Among the costs itemized for Chartis in the Debtor's submissions were invoices from L&G totaling $284,102.18 for work done pre-petition in connection with the Diluent Condition that remained unpaid. Id.

On November 16, 2012, L&G filed an adversary proceeding against the Debtor [See Docket No. 12-50989, the "L&G Adversary Proceeding"], seeking a declaratory judgment that it had a lien over all assets of the Debtor, and consequently, was entitled to priority over the insurance funds available under the Policy.

Because Debtor's loss vastly exceeded the Policy Limits, on December 19, 2012, Chartis reached a settlement with the Debtor pursuant to which, in exchange for a full release of "any and all claims pertaining to the Policy," Chartis turned over to the Debtor all the available funds under the Policy with the exception of the $284,102.18 that are at stake in this proceeding. See **Exhibit G**. Given the uncertainties created by the L&G Adversary Proceeding and the demand made by L&G to be paid directly by the carrier, Chartis commenced this interpleader action to avoid a double exposure and a double payment. Id.

On or about May 2013, the Court granted the Debtor's motion to dismiss the L&G Adversary Proceeding. See **Exhibit H**. Consequently, L&G is, at best, a general, unsecured creditor of the Debtor's estate. As such, and as shown below, L&G does not have any priority

5

over the funds at stake here, which should be treated exactly as the other funds already turned over by Chartis in accordance with the terms of the Release.

**LEGAL ARGUMENT**

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEBTOR, DECLARING THE FUNDS TO BE THE DEBTOR'S PROPERTY**

**1.    L&G Is Not Entitled to the Funds Directly from Chartis Because L&G Has No Privity with the Carrier.**

L&G has no right to the funds at issue in this case. It is undisputed that L&G is not an insured under the Policy. See Exhibit A (Policy, Declarations ("Item 1. Named Insured: Tri Valley Corporation")). Moreover, L&G was not even retained by Chartis, but rather by the Debtor. In short, L&G cannot enforce any rights it may have to collect its fees from Chartis for the legal services L&G provided to the Debtor. See, e.g., Old Republic Ins. Co. v. Sidley & Austin, 702 F. Supp. 207, 211 (N.D. Ill. 1988) ("No court has ever held -- indeed the proposition seems never before even to have been advanced -- that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees.") (citing Continental Casualty Co. v. Marx, 480 So.2d 177, 178-79 (Fla.App. 3d Dist. 1985), review dismissed, 484 So.2d 9 (1986)).

Nothing under the Policy obligates Chartis to pay L&G's fees. As shown below, the funds at stake belong to the Debtor's estate as they represents the proceeds from a settlement between the Debtor and Chartis over the Debtor's rights under the Policy. See In re Hronek, 563 F.2d 296 (6th Cir. 1977). Accordingly, summary judgment should be entered in favor of the Debtor, directing the Court's clerk to turn over of the funds to Charles Stanziale as the Chapter 7 Trustee appointed in this bankruptcy.

L&G also cannot argue that it is a third-party beneficiary of the contract between the Debtor and Chartis. The fact that the Policy includes an explicit requirement to pay attorneys'

fees is insufficient to render L&G a third-party beneficiary. Id. at 211.[1] To be considered a third-party beneficiary, the contract at issue must confer a direct -- as opposed to incidental -- benefit. Id.; Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App.4th 1004, 1022 (Ct. App. 2009). The direct benefit need not have been the sole purpose of the contract but it must be clear that the contracting parties intended the third party to benefit directly. Old Republic, 210-111; Spinks, 171 Cal. App.4th at 1022.

When the Policy was issued in July 2010, there was no indication that a claim would be made for an environmental condition later in November 2010. As such, the provision requiring the payment of attorneys' fees in the policy was included to give the Debtor the benefit of its bargain -- the assurance that Chartis would pay attorneys' fees as well as other Losses under the Policy in consideration of the insurance premium. Old Republic, 702 F. Supp. at 211. As a result, any benefit that L&G may claim under the Policy is incidental and not direct. Id.

There is no principled manner to distinguish the L&G fees from other costs incurred by the Debtor in connection with the environmental condition at the Property. L&G has no right to dictate how the insurance funds should be distributed or that it should be paid ahead of other costs incurred by the Debtor in connection with the environmental condition at the Property. These costs far exceeded the Policy Limits and included, among others, the credit of $650,000 given to the purchaser of the Pleasant Valley assets at closing against the purchase price.

---

[1] Although Old Republic was decided under Illinois law, and arguably the applicable law in this case is California law given that the property covered under the Policy is in California, the law of the two states on third party beneficiaries is substantially the same. See, e.g., Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1022 (Ct. App. 2009) ("The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party. The effect … is to exclude enforcement by persons who are only incidentally or remotely benefited.") (internal citations omitted).

There is no basis to afford any priority to L&G over such costs or even other general unsecured creditors, especially after the Court determined that L&G was not a secured-creditor of the Debtor. In reality, L&G is simply a general unsecured creditor and its right to payment, whatever that may be, must be part of the regular claims administration process. Consequently, summary judgment should be entered in favor of the Trustee.

**2.    The Deposited Funds Belong to the Debtor as They Are Proceeds of the Debtor's Settlement with Chartis under the Policy.**

Chartis determined that the Debtor's losses far exceeded the Policy Limits. As part of this determination, the carrier turner over the Policy to the Debtor in exchange for a release of all claims under the Policy. In other words, Chartis and the Debtor reached a settlement regarding coverage under the Policy. It is unquestionable that the Policy constitutes property of the Debtor's estate. Only the Debtor could compromise coverage issues. See, e.g., In re Fritzsch Custom Builders, LLC, 474 B.R. 515, 520 (Bankr. S.D. Ohio, 2010) (holding that a debtor's contractual rights against its insurer constitute estate property). As a matter of law, the settlement proceeds from such compromise are assets of the estate. Id. In re Soliz, 77 B.R. 93 (Bankr. N.D. Tex. 1987) (holding that settlement proceeds belonged to the estate because the settlement involved issues regarding contract rights between the bankrupt and the insurance company).

In re Hronek, 563 F.2d 296 (6th Cir. 1977), further illustrates that the proceeds at stake here, which stemmed from the settlement between the Debtor and Chartis, are property of the estate. In that case, Hronek purchased a car from a dealer. Before title passed from the dealer to Hronek, the latter was involved in an accident in which Sainsbury was injured. At the time of the accident, Hronek had no insurance. The dealer, however, had an insurance policy with Hartford. Sainsbury filed suit against the dealer and Hronek. Both defendants sued Hartford seeking a ruling that Hronek was an insured under the dealer's insurance policy. The District Court and Sixth Circuit ruled in Hronek's favor on the coverage issue. As a result, Hronek's lawyer in the personal-injury suit filed a motion requesting that Hartford pay his attorney fees. Thereafter, Hronek filed a bankruptcy petition.

The trustee in the bankruptcy case asserted a claim against Hartford for failure to defend the personal-injury case against Sainsbury. Hartford offered to pay $2,500 as a settlement for the

legal fees incurred. The trustee then filed a suit to recover the funds offered by the carrier. In its answer, the carrier admitted the offer to pay and requested that the Bankruptcy Court determine whether payment should be made to the trustee or to the lawyer. The Bankruptcy Court held that the funds from Hartford were an asset of the debtor's estate; that the lawyer had no contractual relationship with Hartford to support his claim for attorney's fees and that Hartford's obligation derived from a contract for the benefit of Hronek.

On appeal, the District Court reversed, but on further appeal, the Sixth Circuit upheld the Bankruptcy Court's decision, finding that the claims against the carrier belonged to the debtor and that any proceeds from the settlement of the claims also belonged to the estate. The attorney's only remedy to recover fees was against his client, Hronek. Id.

The only difference between Hronek and this case is that in Hronek the trustee filed a suit after reaching an agreement with the insurer to recover the agreed amount to be paid by the carrier. The carrier admitted its offer in its answer, and as the Sixth Circuit noted, the suit was in essence "an interpleader action with Hartford as the stakeholder" and represented a "settlement subject to a judicial determination of who was entitled to the funds" Id. at 298.

Here, after reaching a settlement with the Debtor, Chartis filed the interpleader action directly as the carrier felt the need to obtain a judicial determination as to who was entitled to the portion of the policy claimed by L&G. In the end, the parties are in the same procedural posture as in Hronek. In short, there is no principled way to distinguish Hronek from the present case. Accordingly, summary judgment should be entered in favor of the Debtor, and the funds deposited with the Court should be turned over to the Trustee.

**CONCLUSION**

      L&G has no right to the funds at stake in this matter. As this Court held, L&G is not a secured creditor, but a general unsecured creditor. As such, L&G cannot claim any priority over the insurance funds deposited with the Court. In contrast, the funds belong to the estate as they stemmed from a settlement of all claims under the Policy between the Debtor and the carrier. Consequently, summary judgment should be entered in favor of the Trustee and the Clerk of the Court should be directed to turn over the funds to the Trustee.

Dated: February 28, 2014
       Wilmington, Delaware

                              *William F. Taylor, Jr.*
                              **McCARTER & ENGLISH, LLP**
                              William F. Taylor, Jr. (DE #2936)
                              Kate R. Buck ( DE No. 5140)
                              Renaissance Centre
                              405 N. King Street, 8th Floor
                              Wilmington, DE 19801
                              Telephone 302.984.6300
                              Facsimile 302.984.6399
                              wtaylor@mccarter.com
                              kbuck@mccarter.com

                              - and -

                              Charles A. Stanziale, Jr.
                              Eduardo J. Glas
                              Four Gateway Center
                              100 Mulberry Street
                              Newark, NJ 07102
                              Telephone: (973) 622-4444

                              *Attorneys for the Chapter 7 Trustee*