**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRI-VALLEY CORPORATION, et al. | ) | Case No. 12-12291 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| CHARTIS SPECIALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-51243(MFW) |
| | ) | |
| TRI-VALLEY CORPORATION and LUNA & GLUSHON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

This opinion addresses the competing claims of the Trustee

and Debtor's defense counsel to insurance proceeds.  The Court

concludes that defense counsel has no direct claim to the

proceeds and they are property of the estate.  The Court,

therefore, grants the Trustee's motion for summary judgment and

denies defense counsel's cross-motion for summary judgment.


I.    BACKGROUND

Debtor Tri-Valley Corporation ("TVC") conducted oil and gas

exploration and production activities.  (Adv. D.I. 24 at 3.)  In

connection therewith, TVC purchased an insurance policy, the

_____

        [1]  This Memorandum Opinion constitutes the findings of fact
and conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

Pollution Legal Liability Select Policy (the "Policy"), from

Chartis Specialty Insurance Company ("Chartis"), for the period

of July 1, 2010, to July 1, 2011, with an aggregate limit of

$1,000,000.  (Id.)

Beginning in 2006, TVC and co-debtor Tri-Valley Oil & Gas

Co. ("TVOG") leased a tract of land from Pleasant Valley Ranch,

LLC ("Pleasant Valley").  (Id.)  In November 2010, Pleasant

Valley discovered that a substance known as diluent had polluted

the soil on the leased property.  (Id.)  In November 2011,

Pleasant Valley sued TVC and TVOG in California Superior Court

for the alleged pollution.  (Id.)  TVC retained Luna & Glushon

("L&G") to defend the claim.  (Id.)

Under the Policy, "Loss" included "[c]osts, charges and

expenses incurred in the defense . . . of Claims."  (Adv. D.I. 1

at ¶ 12.)  As a result, TVC submitted numerous L&G invoices to

Chartis for payment.  (Id.)  Chartis paid the invoices, with

certain reductions.  (Id. at ¶ 13.)

On August 7, 2012 (the "Petition Date"), the Debtors

commenced a case under chapter 11 of the Bankruptcy Code.  At

some point[2], L&G submitted additional documentation supporting

previously unpaid amounts and certain new invoices directly to

Chartis.  (Id. at ¶¶ 14, 15.)  After reviewing these submissions,

Chartis determined that $284,102.18 was payable to L&G according

---

[2]   It is unclear whether this was pre or post-petition.

to the terms and conditions of the Policy.  (Id. at ¶ 16.)  L&G
demanded payment directly from Chartis.  (Id. at ¶ 22.)

Separately, TVC submitted documentation to Chartis showing
that its potential liability arising from the Pleasant Valley
claim exceeded its remaining Policy limit and, therefore,
requested that Chartis turn over all remaining insurance proceeds
in contribution to a Court-approved settlement with Pleasant
Valley.  (See Adv. D.I. 27, Certification of Maston N. Cunningham
at ¶ 12.)

On December 10, 2012, Chartis agreed with TVC to turn over
the remaining proceeds to the estate in exchange for a release.
(Id. at ¶ 14.)  On that same date, Chartis filed this
interpleader action to resolve the competing claims of L&G and
TVC to $284,102.18 of those proceeds (hereinafter the "Interpled
Funds").  (Adv. D.I. 1 at ¶ 24.)

On March 25, 2013, the case was converted to chapter 7 and
Charles A. Stanziale, Jr., was appointed Trustee (the "Trustee").
(D.I. 692.)  On February 28, 2014, the Trustee filed a Motion for
Summary Judgment in the Interpleader Action.  (Adv. D.I. 24.)
L&G filed a Cross-Motion for Summary Judgment on March 14, 2014.
(Adv. D.I. 25.)  A notice of completion of briefing was filed on
April 4, 2014, and the matter is now ripe for decision.  (Adv.
D.I. 30.)

II.   <u>JURISDICTION</u>

The Court has jurisdiction over this core proceeding because it involves a determination of what is property of the estate. 28 U.S.C. § 1334(b) & § 157(b).  See also <u>Jorge Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)</u>, 435 B.R. 894, 904-5 (Bankr. D. Del. 2010) (finding that Bankruptcy Court had exclusive jurisdiction to determine whether or not aircraft was property of the estate); <u>Williams v. McGreevey (In re Touch Am. Holdings, Inc.)</u>, 401 B.R. 107, 117 (Bankr. D. Del. 2009) (stating approvingly that "[v]arious courts have concluded that matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541 are core proceedings.").

III.   <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]

---

[3]   Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.

In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986);  Hollinger v. Magner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, the Court must enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986);  Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1985);  Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007).  A fact is material when it could "affect the outcome of the suit."  Anderson, 477 U.S. at 248.

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial.  See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000);  Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d

160, 164 (3d Cir. 1999).  If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

   B.   L&G's Motion for Summary Judgment

L&G asserts a right to receive the Interpled Funds directly from Chartis under the terms and conditions of the Policy.  L&G notes that the Policy is a third-party liability policy, which provides that Chartis "shall" pay proper third-party claimants "on behalf of TVC."  According to L&G, Chartis was therefore obligated to pay L&G's fees directly after determining that the Interpled Funds were payable to L&G.

The Trustee argues that L&G has no direct claim to any Policy proceeds and thus cannot demand payment from Chartis.  In support, the Trustee contends that L&G has no privity with Chartis and is not a third-party beneficiary of the Policy.  The Trustee argues that the Policy does not obligate Chartis to pay L&G directly and, in fact, prohibits third parties from asserting direct claims unless certain conditions are met, none of which are with respect to L&G's claim.

   1.   Privity and third-party beneficiary status

L&G does not dispute that it lacks privity with Chartis and is not a third-party beneficiary of the Policy.  However, L&G argues that such distinctions are irrelevant.

The Court disagrees.  Because L&G lacks privity with Chartis and is not a third-party beneficiary of the Policy, it cannot enforce the terms of the Policy against Chartis.  See, e.g., Old Republic Ins. Co. v. Sidley & Austin, 702 F.Supp 207, 211 (N.D. Ill. 1988) ("No court has ever held . . . that a lawyer himself may sue upon an insurance policy or any other agreement which obligates one contracting party to pay the other's legal fees.") (citing Continental Casualty Co. v. Marx, 480 So.2d 177, 178-79 (Fla. App. 3d Dist. 1985)).  Thus, although the Policy does provide that Chartis "shall" pay attorneys' fees incurred in defense of claims against TVC, Chartis' direct legal obligation is to TVC, not L&G.  L&G's claim is against TVC, not against Chartis or the insurance proceeds.

2.   Section VI-C

Furthermore, section VI-C of the Policy expressly precludes third-party claims against the Policy unless amounts due have been finally determined by: (1) prior judgment against TVC after actual trial, or (2) written agreement of the claimant, Chartis and TVC.  According to the Trustee, neither of these conditions have been met.  L&G has not argued otherwise.

For these reasons, the Court concludes that L&G has no direct enforceable claim to the Interpled Funds.  Therefore, its motion for summary judgment will be denied.

C.    The Trustee's Motion for Summary Judgment

The Trustee argues that the Interpled Funds are property of the estate because they are the proceeds of a post-petition settlement of TVC's rights under the Policy with Chartis.

L&G argues that, because the Policy is a liability policy, TVC had no cognizable interest in the Interpled Funds as of the Petition Date and, therefore, the Interpled Funds cannot be property of the estate.

L&G also contends that there was, in fact, no settlement between Chartis and TVC with respect to the Interpled Funds. According to L&G, the Interpled Funds were expressly excluded from the purported settlement, which is nevertheless void and unenforceable for failure to obtain court approval as required by Bankruptcy Rule 9019.

1.    Policy/Proceeds distinction

L&G correctly argues that courts distinguish between an insurance policy and the policy proceeds in determining what constitutes property of the estate.  See, e.g., Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51 (5th Cir. 1993) (distinguishing between the debtor's medical malpractice insurance policy and its proceeds in determining scope of discharge injunction because, although the debtor owned the policy itself, he had no claim to any proceeds);  First Fidelity Bank v. McAteer, 985 F.2d 114, 117 (3d Cir. 1993) (holding that

the proceeds of a debtor's credit life and credit disability
insurance policy were not property of the estate, but of the
creditor named as the primary beneficiary of the policy).

These cases are distinguishable.

The creditor in McAteer was the primary beneficiary of the
policy and thus had a direct legal claim to the proceeds.  See
985 F.2d at 118-19.  Because its claim covered all of the
proceeds, the debtor, as secondary beneficiary, had no claim.
Id.  As discussed above, L&G has no direct claim to the proceeds
and thus has no interest senior to the estate's.  Moreover, the
Trustee contends that it has a claim to the proceeds pursuant to
a settlement with the insurer.

The debtor in Edgeworth asserted no claim to the policy
proceeds beyond ownership of the policy itself and, in fact, had
denied having any interest in any insurance policies in his
bankruptcy schedules.  993 F.2d at 55.  Because the debtor had no
legal claim to any policy proceeds, the Edgeworth Court found
that they were not property of the estate.  Id. at 56.  Here, the
Trustee claims an interest in the proceeds pursuant to a
settlement of TVC's rights under the Policy with the insurer.

Courts consistently hold that a debtor's insurance policy
and its rights thereunder are property of the estate.  See
Edgeworth 993 F.2d at 55 ("[C]ourts are generally in agreement
that an insurance policy will be considered property of the

9

estate . . . because, regardless of who the insured is, the
debtor retains certain contractual rights under the policy
itself."); Landry v. Exxon Pipeline Co., 260 B.R. 769, 787
(Bankr. M.D. La. 2001) ("the rights held by a debtor under
insurance policies are property of the estate.").  Thus, the
Court finds that the Policy and TVC's rights thereunder are
property of the estate.

Although TVC could not have demanded that Chartis turn over
any Policy proceeds, as the owner of the Policy it was entitled
to negotiate a settlement.  After TVC demonstrated that its
potential liabilities exceeded the remaining Policy limits,
Chartis agreed to turn over the remaining proceeds in exchange
for a release.  Any funds tendered pursuant to that agreement are
proceeds of estate property and, therefore, property of the
estate.  11 U.S.C. § 541(a)(6).

    2.    Scope of the settlement

L&G argues that the Interpled Funds were expressly excluded
from the purported settlement.  According to L&G, Chartis only
determined that TVC's potential liability exceeded $359,804.69
(the $1,000,000 limit less amounts previously paid and less the
Interpled Funds).  Therefore, L&G claims that Chartis only
offered $359,804.69 as a contribution to the settlement with
Pleasant Valley.

The Court disagrees.  Chartis conceded it was liable for the Interpled Funds and gave up any claim to them by filing the Interpleader Action.  Those funds relate to L&G's claim for fees, which the parties agree qualifies as a "Loss" under the Policy.  Thus, the Interpled Funds must be included in the calculation of TVC's (and Chartis') potential exposure on the Pleasant Valley claim.  In filing the Interpleader Action and reaching a settlement with the Trustee, Chartis has therefore acknowledged that its liability is $1 million under the Policy.  It has previously paid $356,093.13, has interpled $208,102.18 in connection with this dispute, and has tendered the remainder of $359,804.69 to TVC.

Moreover, as TVC demonstrated to Chartis, its total exposure was nearly $2,000,000 and justified a full settlement of the Policy regardless of L&G's claim.

The Court, therefore, finds that Chartis agreed to turn over all of the remaining Policy proceeds to TVC in connection with the settlement and release, subject to this Court's determination of whether L&G or TVC was entitled to receive the Interpled Funds.

As discussed above, the Court has concluded that L&G has no enforceable direct claim to the Interpled Funds.  Therefore, the Court concludes that they are property of the estate, as proceeds of TVC's rights under the Policy.

3.   Enforceability of the settlement

L&G argues that the purported settlement is invalid because it was not approved by the Court following prior notice to creditors and parties in interest.  See Fed. R. Bankr. P. 9019(a) ("On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement"); Fed. R. Bankr. P. 2002(a)(3) (providing that the debtor, the trustee, all creditors and indenture trustees shall have 21-days notice by mail of a hearing on approval of a compromise or settlement of a controversy).

The Trustee claims that the Court can determine the validity of the settlement in this proceeding and that further notice is not required because all potentially affected parties are parties to this proceeding.

The Court concludes that Rule 9109 is inapplicable.  Rule 9019 protects creditors from unilateral acts of a trustee or debtor-in-possession that may unreasonably compromise estate assets, by requiring the court to determine independently whether a proposed settlement of a claim or controversy is fair and equitable.  See Reynolds v. C.I.R., 861 F.2d 469, 473 (6th Cir. 1988).  In considering whether to approve a settlement under Rule 9019, the Court must balance the value of the claim that is being compromised against the value to the estate of accepting the

compromise proposal.  In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).

In this case, TVC was not seeking to settle a disputed claim against Chartis.  Chartis voluntarily agreed to turn over all of the remaining Policy proceeds, the amount of which is undisputed. Thus, there is no danger that the settlement will unjustifiably diminish the estate; the estate is receiving the undisputed, maximum value of TVC's rights under the Policy.  The only disputed issue is whether the Trustee, or L&G, is entitled to a portion of those proceeds.  That is the issue raised by this adversary and all parties with an interest in that issue are parties to this proceeding.

The Court concludes that the agreement between Chartis and TVC is not a "settlement" as contemplated by Rule 9019.  Thus, the notice requirements of that rule do not apply.


IV.  CONCLUSION

For the reasons stated above, the Trustee's Motion for Summary Judgement will be granted and Luna & Glushon's Cross-Motion for Summary Judgment will be denied.

An appropriate order is attached.


Dated: November 25, 2014          BY THE COURT:

                                  Mary F. Walrath
                                  United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRI-VALLEY CORPORATION, et al. | ) | Case No. 12-12291 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| CHARTIS SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-51243(MFW) |
| | ) | |
| TRI-VALLEY CORPORATION and | ) | |
| LUNA & GLUSHON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## O R D E R

**AND NOW**, this **25th** day of **NOVEMBER, 2014,** upon consideration

of the Defendants' Cross-Motions for Summary Judgment on the

Interpleader Complaint and for the reasons set forth in the

accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Cross-Motion for Summary Judgment filed by

Defendant Luna & Glushon is **DENIED**; and it is further

**ORDERED** that the Motion for Summary Judgment filed by

Charles A. Stanziale, Jr., as Chapter 7 Trustee for Defendant

Tri-Valley Corporation is **GRANTED**; and it is further

**ORDERED** that the Clerk of Court shall release the

$284,102.18 held by it to Charles A. Stanziale Jr., in his

capacity as Chapter 7 Trustee for Defendant Tri-Valley

Corporation.


                              BY THE COURT:

                              _Mary F. Walrath_
                              Mary F. Walrath
                              United States Bankruptcy Judge


cc: William F. Taylor, Jr., Esquire[1]


---
[1] Counsel shall distribute a copy of this Order and
accompanying Memorandum Opinion on all interested parties and
file a Certificate of Service with the Court.

## SERVICE LIST

William F. Taylor, Jr., Esquire
Kate R. Buck, Esquire
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Counsel for the Chapter 7 Trustee

Charles A. Stanziale, Jr., Esquire
Eduardo J. Glas, Esquire
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Counsel for the Chapter 7 Trustee

Michael D. DeBaecke, Esquire
Stanley B. Tarr, Esquire
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Counsel for Luna & Glushon

Jesse Silverman, Esquire
Dilworth Paxson, LLP
150 Market Stret Suite 3500E
Philadelphia, PA 19102
Counsel for Chartis Specialty Insurance Company

Susan N. K. Gummow, Esquire
Butler Pappas Weihmuller Katz Craig LLP
115 S. LaSalle Street, Suite 3200
Chicago, IL 60603
Counsel for Chartis Specialty Insurance Company